IN THE COURT OF APPEALS OF NORTH CAROLINA

 2022-NCCOA-1

 No. COA20-708

 Filed 4 January 2022

 Wake County, No. 16 CVD 6775

 ERNESTINA ASARE, Plaintiff,

 v.

 DENIS ASARE, Defendant.

 Appeal by defendant from order entered 25 March 2020 by Judge J. Brian

 Ratledge and from order entered 26 January 2017 by Judge Debra Sasser in District

 Court, Wake County. Heard in the Court of Appeals 27 April 2021.

 No brief filed for plaintiff-appellee.

 Marshall & Taylor, PLLC, by Travis Taylor, for defendant-appellant.

 STROUD, Chief Judge.

¶1 Denis Asare (“Husband”) appeals from the trial court’s order for alimony,

 attorney’s fees, and equitable distribution. Husband asserts the trial court abused

 its discretion in several respects, including arguments related to the trial court’s

 findings of fact, classification of property, and equitable distribution. Because one of

 the trial court’s findings of fact regarding classification of divisible property was not

 supported by the evidence, we remand for entry of a new order with new findings as

 to the classification and valuation of the post-separation appreciation of the
 ASARE V. ASARE

 2022-NCCOA-1

 Opinion of the Court

 Vanguard account and for the trial court to make an equitable distribution based

 upon the new findings. The trial court’s other findings of fact are supported by the

 evidence, and we find no abuse of discretion and therefore affirm the trial court’s

 order as to alimony.

 I. Background

¶2 Husband and Ernestina Asare (“Wife”) were married on 25 March 1995. The

 parties had four children. Wife filed a complaint for equitable distribution,

 postseparation support, alimony, and attorney’s fees on 24 May 2016. In the

 complaint, Wife asserted that the date of separation was 18 August 2015 when

 Husband “willfully abandoned” Wife. Wife alleged that Husband “had been

 commuting for work to Virginia during the week, returning to the former marital

 residence on weekends and holidays.” Husband filed an answer on 8 July 2016,

 asserting that the date of separation was 1 April 2012. In the answer, Husband

 admitted that the parties’ two children “resided with the parties at [the marital home]

 in Morrisville, North Carolina 27560 from 2006 until August 2015, when each of the

 younger children enrolled in college.”

¶3 On 26 January 2017, the trial court conducted a hearing regarding

 postseparation support, attorney’s fees, and the parties’ date of separation. On 26

 January 2017, the trial court entered an order concluding the date of separation was

 18 August 2015.

 -2-
 ASARE V. ASARE

 2022-NCCOA-1

 Opinion of the Court

¶4 On 6 February 2017, Husband filed motions for relief from judgment, new trial

 and amendment of findings pursuant to Civil Procedure Rules 52, 59, and 60 from

 the trial court’s order establishing the date of separation. Husband contended that

 the evidence presented did not support several findings of fact and one conclusion of

 law. The trial court denied Husband’s motions on 30 May 2017.

¶5 On 14 February 2017, the trial court entered an order for postseparation

 support and attorney’s fees in favor of Wife. The trial court ordered Husband to pay

 monthly postseparation support to Wife in the amount of $3,400.00 effective

 1 September 2015, with the obligation remaining until the first of the following

 occurred: 1 August 2018, the entry of an order allowing or denying alimony to Wife,

 dismissal of Wife’s alimony claim, or as provided in North Carolina General Statute

 § 50-16.9(b). The trial court also ordered Husband to pay a minimum of $50.00 per

 month to be applied to satisfy postseparation support arrears in the amount of

 $19,131.00 and $4,000.00 in Wife’s attorney’s fees.

¶6 On 23 February 2017, Husband filed motions for relief from judgment,

 amendment of findings, and for a new trial on the postseparation support order based

 upon Civil Procedure Rules 52, 59, and 60. Husband challenged several findings of

 fact and conclusions of law. He also argued that he had not received a fair trial for

 several reasons, including “time constraints imposed by the Court” that prevented

 Husband from submitting “much of the evidence he wanted to present to refute

 -3-
 ASARE V. ASARE

 2022-NCCOA-1

 Opinion of the Court

 [Wife]’s testimony[,]” that Husband was “not afforded the opportunity to consult with

 his attorney to cross-examine an important witness[,]” and that the trial court had

 “interrupted [Husband]’s attorney and prevented him from completing questions.”

¶7 On 26 June 2017, the trial court entered an order denying Husband’s motions

 for relief from judgment and for a new trial and granting in part Husband’s motion

 to amend the findings of fact. In addressing Husband’s motion, the trial court found

 that “[i]n reviewing the totality of the evidence, the Court finds that there was

 sufficient credible evidence to support these findings of fact about which [Husband]

 complains except as specifically noted herein.”

¶8 On 21 October 2019, the trial court heard the claims of equitable distribution

 and alimony. As relevant to the issues on appeal, the evidence showed that at the

 time of the trial, Wife was sixty years of age and residing at the former marital home

 in Morrisville, North Carolina (“marital home”), and Husband was sixty-seven years

 of age and residing with his nephew in West Legon, Ghana. The parties moved to

 North Carolina in 2006 after Husband became employed by Blue Cross Blue Shield

 of North Carolina. In October 2011, Husband started employment with

 Corvesta/Delta Dental (“Corvesta”) in Roanoke, Virginia. In 2007, the parties

 purchased the marital home, which the parties agreed was originally held by the

 parties as tenants by the entirety.

¶9 During Wife’s presentation of evidence, the trial court heard testimony from

 -4-
 ASARE V. ASARE

 2022-NCCOA-1

 Opinion of the Court

 real estate appraisal expert Michael Ogburn (“Mr. Ogburn”). Mr. Ogburn, who was

 appointed by the trial court to appraise the marital home, testified that the fair

 market value of the home on 18 August 2015—the date of separation—was

 $455,000.00. Mr. Ogburn based his testimony on his appraisal report, which was

 admitted into evidence. Mr. Ogburn conducted another appraisal on 15 August 2018

 and valued the marital home at $496,500.00. Mr. Ogburn testified that the valuation

 was based on a “direct sales comparison approach using properties within that

 immediate market[.]” Mr. Ogburn noted there was “a strong market with demand

 exceeding supply” which contributed to the increase in property value, while also

 noting the marital home was “over built” for the neighborhood, meaning the marital

 home was more valuable than neighboring properties.

¶ 10 The trial court next heard testimony from Bonnie Bowen (“Ms. Bowen”), called

 by Husband and stipulated by the parties as an expert witness in valuation of

 retirement benefits. Ms. Bowen was retained by Husband to determine the marital

 and separate components of Husband’s retirement accounts. Ms. Bowen testified that

 the retirement accounts had a total value of $726,032.00 at the date of separation,

 $413,897.00 of which was marital and $312,135.00 of which was separate. By the

 date of distribution on 31 March 2019, the retirement accounts grew to a total of

 $1,041,991.00, with $523,763.00 marital and $518,228.00 separate. Ms. Bowen gave

 extensive testimony regarding her methods in tracking Husband’s assets and in

 -5-
 ASARE V. ASARE

 2022-NCCOA-1

 Opinion of the Court

 determining which portions were marital and separate.

¶ 11 Husband testified that he was sixty-seven years old at the time of the hearing,

 and he resided in West Legon, Accra, Ghana. Husband stated that he had moved to

 Ghana in October 2018 after selling a condominium in Roanoke, Virginia (“Roanoke

 condominium”) because he “had nowhere to stay.” When asked to clarify if Ghana

 was his permanent residence, Husband responded that he had moved to Ghana

 because he lost his job and had not “found anything,” making it “futile . . . to stay in

 Roanoke, because there were very limited job opportunities.”

¶ 12 Regarding his employment and qualifications, Husband testified that he had

 two MBA degrees and was last employed with Corvesta Delta Dental in

 February 2018. Husband stated that he received severance pay for six months,

 received “around $6,000” in unemployment benefits in 2018, and was currently

 receiving income from Social Security. Husband estimated that he was receiving

 approximately $2,500.00 per month with deductions for Medicare coverage but noted

 that he did not “remember the exact amount” because he did not have access to the

 accounts while staying in Ghana. Husband stated that he was not receiving any

 income from any other sources at the time of the hearing. Husband stated that he

 had withdrawn $40,000.00 from his Vanguard retirement account a few months

 earlier “as a result of a freeze that was put in [his] account and then that money

 escrow being given to [Wife].” Husband also stated that he sold the Roanoke

 -6-
 ASARE V. ASARE

 2022-NCCOA-1

 Opinion of the Court

 condominium the year prior and received “[a]bout $80,000” in proceeds.

¶ 13 Husband testified that he owned a house in Acworth, Georgia (“Georgia home”)

 on the date of separation and that the Georgia home was purchased during the

 marriage. Husband testified the Georgia home was sold on 9 July 2017 for

 $223,000.00, netting $92,122.91 in proceeds. The proceeds were awarded to Wife as

 an interim distribution on 17 July 2018. Husband also stated that a total of “about

 $60,000” was incurred to sell the Georgia home and that he paid $21,262.00 for

 repairs and maintenance of the Georgia home prior to its sale. When asked about a

 payment of $1,837.81 listed on an account balance from 31 January 2011, Husband

 stated that “it looks like it’s the tax that I was paying on the Acworth home[,]” and

 that “I wouldn’t say it is, but it could be. It looks like.” Husband testified that an

 “account payoff” of $13,225.14 from 4 November 2013 was connected to a refinancing

 of the Georgia home.

¶ 14 The trial court admitted evidence of relevant bank account statements. When

 Wife’s trial counsel asked if a 23 October 2015 withdrawal of $29,000.00 from his US

 Alliance account was to purchase the Roanoke condominium, Husband stated that it

 was not, but did not provide any other explanation for the withdrawal. Husband also

 confirmed that a Union Bank account statement from 11 November 2015 listed a

 $19,000.00 withdrawal.

¶ 15 On cross examination, Husband answered additional questions regarding

 -7-
 ASARE V. ASARE

 2022-NCCOA-1

 Opinion of the Court

 various items included in his EDIA, including his income, tax deductions, and

 expenses at the date of separation. Husband testified that he listed $2,500.00 in

 current income from Social Security and estimated $3,000.00 in mandatory monthly

 deductions, based on a tax burden of $36,000.00 for the year after selling the Georgia

 home. Husband additionally listed deductions of $150.00 per month for Medicare,

 $400.00 per month for a “dental insurance estimate” and $100.00 for “vision

 insurance[.]” Husband confirmed that he listed monthly expenses totaling $7,110.00

 at the date of separation.

¶ 16 Wife’s trial counsel then questioned Husband regarding his expenses. When

 Wife’s trial counsel asked Husband to clarify “which of the expenses [he was] actually

 paying as of [that day,]” Husband responded that he “made a statement that [he] had

 to go to Ghana because [he had] no place to stay,” so he was “currently not paying

 anything[.]” However, Husband then stated that “that’s short lived[,]” and that he

 would begin to resettle his expenses as soon as the case was settled. When asked if

 the grand total for Part 1 expenses was zero, Husband replied: “Not really. For

 example, I have Internet service, I have a cell phone, I have auto insurance; I buy

 gas, I have my auto repairs; I eat, so food and household supplies would be part of

 it[.]” When asked if these expenses totaled $335.00, Husband stated that he

 “wouldn’t say correct or wrong, but I’m saying that I’m in transit right now, so I don’t

 have any expenses that – but it’s going to change after today . . . and I’m estimating

 -8-
 ASARE V. ASARE

 2022-NCCOA-1

 Opinion of the Court

 that this will be the expenses based on the past pattern of life that I live; these would

 be my expenses.”

¶ 17 Wife’s trial counsel continued questioning Husband on specific portions of his

 EDIA, particularly expenses listed under the “current” column. Husband stated that

 it was “more or less an income statement, it’s a flow, so we just can’t look at one

 particular date to make an assessment.” Husband also asked why Wife’s trial counsel

 was “using six months” to measure his spending on medical insurance. The trial court

 paused to address Husband:

 THE COURT: Sir, if you need clarification, this is not a --
 this is not a chess match, sir.

 [HUSBAND]: No. Okay.

 THE COURT: And let me pause it right here. Sir, you’ve
 done this repeatedly throughout this hearing and, believe
 me, the Court’s taken notice.

 [HUSBAND]: Okay.

 THE COURT: Answer the question that you’re asked, not
 the question that you wish you were asked.

 [HUSBAND]: Okay.

 THE COURT: Okay?

 [HUSBAND]: I just want to understand the basis so I can
 correct --

 THE COURT: I know. Well --

 [HUSBAND]: -- the answers.

 THE COURT: Well, I think you understand the basis on a
 -9-
 ASARE V. ASARE

 2022-NCCOA-1

 Opinion of the Court

 number of these. Go ahead.

 Husband testified regarding the remainder of other items listed in his EDIA,

 indicating whether the expenses were ongoing or estimated future expenses.

¶ 18 Wife testified that at the time of the hearing she was sixty years old and

 worked forty hours per week as a surgical sterile processor for Duke University

 Health System. Wife stated that she was being paid $15.36 per hour at the time but

 anticipated an increase in pay rate pending a certification she was working towards.

 Wife stated that she previously worked at Home Depot in 2018 and Bed Bath &

 Beyond in 2018 and 2019. Wife testified that when the family lived in Georgia, all of

 her income “was given to [Husband]” and when the family lived in North Carolina,

 Wife used her income for food, children’s expenses, and personal spending. Wife also

 testified that she received about $10,000.00 from her daughter in 2019.

¶ 19 Wife testified that she relocated to Georgia in 2000 and to North Carolina in

 2006 due to Husband’s employment in those states. Wife also stated that Husband

 sought to relocate the family to Ghana in 2002 and to Georgia in 2013, but Wife

 refused to relocate on both occasions. Wife also testified that due to Husband’s

 frequent travel, she “was a stay-at-home mom” and “in charge of the children[,]” with

 respect to their hygiene, education, and overall needs.

¶ 20 Regarding her expenses, Wife testified that the mortgage payment on the

 marital home was $1,832.59 as of November 2018 and that the payment had

 - 10 -
 ASARE V. ASARE

 2022-NCCOA-1

 Opinion of the Court

 increased to $2,047.60 by the date of the hearing.

 The Equitable Distribution and Alimony Order

¶ 21 On 25 March 2020, the trial court entered an order for alimony, attorney’s fees,

 and equitable distribution. Finding of Fact 17 included ten separate sections

 detailing the parties’ property interests.

 Finding of Fact 17(I): Real Property

¶ 22 Subsection A concerns the parties’ marital home. The trial court found the

 marital home was marital property, Mr. Ogburn’s testimony was credible as to the

 fair market value of the home on the date of separation, the mortgage was classified

 as marital debt, and accordingly that the net marital property value of the marital

 home at the date of separation was $85,582.55. Based on Mr. Ogburn’s testimony

 regarding two appraisals on the marital home, the trial court found that the $41,500

 increase in fair market value from the date of separation until 15 August 2018 was

 classified as divisible property.

¶ 23 In subsection B, the trial court made further findings with respect to the

 Georgia home. The sale proceeds were classified as 100 percent marital property and

 Wife was credited for receiving $92,211.91 as an interim distribution following the

 sale of the Georgia home.

¶ 24 In subsection C, the trial court addressed the Roanoke condominium,

 purchased by Husband shortly after separation. The trial court found that Husband

 - 11 -
 ASARE V. ASARE

 2022-NCCOA-1

 Opinion of the Court

 made a down payment of $39,631.25 in cash on 29 October 2015 after withdrawing

 $29,000 from a US Alliance Bank account on 23 October 2015 and $19,000 from a

 Union Bank account on 26 October 2015. Although the trial court noted that on direct

 examination Husband denied using the money to purchase the Roanoke

 condominium, the trial court found Husband’s testimony “untenable, particularly

 given Husband’s education and sophisticated employment history reflecting six-

 figure annual earnings. This Court is not persuaded by Husband’s inability to recall

 or remember the purpose or use of these large cash withdrawals one week before the

 Roanoke condo was purchased.” Because the money in Husband’s bank account had

 been identified and classified at trial as marital, the trial court determined that the

 Roanoke condominium was “classified as 100% marital property.” Husband sold the

 Roanoke condominium in October 2018 and received $80,000 in net proceeds, which

 the trial court classified as part marital and part divisible property, with $39,631.25

 (the down payment) classified as marital property and $40,368.75 (the increase in

 value) as divisible property.

¶ 25 Subsection D addressed Husband’s property interests in Ghana. Although the

 trial court noted that Husband provided conflicting evidence and testimony regarding

 how much real property he owned in Ghana, it concluded that the only real property

 in Ghana known to the court belonging to either party was Husband’s separate

 property not subject to equitable distribution.

 - 12 -
 ASARE V. ASARE

 2022-NCCOA-1

 Opinion of the Court

¶ 26 The remainder of Finding of Fact 17 addressed the distribution of other

 property assets between the two parties. The trial court found that bank accounts in

 Husband’s name had a total net value of $27,961.83 and distributed the accounts to

 Husband, along with a joint Bank of America account with a total value of $5,902.49.

 The trial court found that bank accounts in Wife’s name had a total value of $414.79

 and distributed the funds to Wife. The trial court noted a Roth IRA investment

 account with a balance of $30,070.31 at the date of separation, classified the account

 as marital property, and distributed it to Husband.

¶ 27 Regarding retirement benefits, the trial court found that during the marriage,

 Husband “was employed at IBM, Jefferson Wells, BCBSNC and Corvesta.” The trial

 court found that Husband’s IBM employment had both pre-marital and marital

 components, his Jefferson Wells and BCBSNC employments had entirely marital

 components, and his Corvesta employment had both marital and post-separation

 components. The trial court determined that Husband’s Vanguard account, which

 was opened in 2010 to rollover his IBM retirement benefits, was a mixed asset. The

 trial court noted that during his IBM employment, Husband acquired a defined

 contribution plan and a defined benefit plan, both of which “had been commingled

 and were held in the Vanguard account[.]” The defined benefit plan was cashed out

 in a lump sum and paid to Husband in 2002.

¶ 28 The trial court summarized Ms. Bowen’s qualifications and testimony, finding

 - 13 -
 ASARE V. ASARE

 2022-NCCOA-1

 Opinion of the Court

 the testimony “credible regarding the tracing-out of the Vanguard Account.” The trial

 court found that Ms. Bowen’s “calculations related to the separate component of the

 Lump Sum part of the Vanguard Account are based on reliable and credible data.”

 The trial court made a similar finding with respect to the 401K portion of the

 Vanguard account. The trial court found that on the date of separation, the Vanguard

 account had a total value of $412,160.00, of which $100,025.00 was classified as

 marital and $312,135.00 was classified as Husband’s separate property. The trial

 court found that there was a net gain from all Vanguard funds totaling $84,609.00

 and that Husband had failed to establish that the increase was separate property,

 accordingly finding that the $84,609.00 was marital property for the purposes of

 equitable distribution.

 Finding of Fact 19: Unequal Distribution

¶ 29 The trial court began by finding that the total net value of the marital and

 divisible estate was $1,033,525.53, and that an equal distribution would result in an

 award of $516,762.76 to each party. Based on the facts of the case, the trial court

 determined that an equal distribution would not be equitable and awarded 57 percent

 of the net marital and divisible estate to Wife, and 43 percent to Husband. The trial

 court made further specific findings after “considering all of the distributional factors

 enumerated in N.C.G.S. § 50-20(c),” beginning with the income, property, and

 liabilities of each party at the time the division of property was to become effective.

 - 14 -
 ASARE V. ASARE

 2022-NCCOA-1

 Opinion of the Court

¶ 30 The trial court found that Wife was sixty years old and was employed with

 Duke University Health System, where she earned $15.36 per hour with the

 expectation that her hourly rate would increase once she completed her certification

 courses. Her pay stub showed gross earnings of $1,084.43 for 70.6 hours and net

 earnings of $935.27. The trial court noted that Wife’s separate property included a

 portion of her 401K account which was earned after the date of separation, and that

 her liabilities included the Roundpoint mortgage she was ordered to pay on the

 marital home, which was $2,047.60 per month at the time, as well as real property

 taxes, utilities, and other living expenses.

¶ 31 With respect to Husband, the trial court found that he was sixty-six years old,

 was last employed by Corvesta before being laid off in February 2018 and was

 currently receiving approximately $2,500.00 per month in Social Security income,

 which began in December 2018 or January 2019. The trial court found that it was

 unclear “whether [Husband] will seek, or begin, some type of gainful employment in

 the future[,]” and that when the issue of employment was addressed at the hearing,

 Husband “provided differing answers regarding employment status, and the Court

 noted his various discrepancies and inconsistencies.” Based on the evidence and

 testimony presented at the hearing, the trial court was “not persuaded [Husband] is

 ‘retired’, unemployable or that he is unable to find suitable work given his

 employment history and educational background.”

 - 15 -
 ASARE V. ASARE

 2022-NCCOA-1

 Opinion of the Court

¶ 32 Subsection B addressed the duration of the marriage and the age and physical

 and mental health of both parties, finding that the parties were married for over

 twenty years, both parties were in their sixties, and “by all accounts, present well and

 appear to be in good physical and mental health.”

¶ 33 Subsection C addressed the expectation of pension, retirement, and other

 deferred compensation rights that were not marital property. The trial court found

 that Husband had separate retirement assets in excess of $450,000.00, while Wife’s

 separate portion of her 401K had a total value of $10,006.91 as of 12 November 2018.

 The trial court further found that although Husband claimed that Wife “caused him

 to lose significant pension benefits with IBM, [Husband] testified he voluntarily

 stopped working at IBM by his own choice. After IBM, he accumulated significant

 retirement benefits from Jefferson Wells, BCBSNC, and Corvesta, as detailed in

 earlier portions of this Order.”

¶ 34 Subsection D addressed any equitable claim to, interest in, or direct or indirect

 contribution to the acquisition of marital property by a party not having title, finding

 that Husband traveled extensively while working with IBM and Jefferson Wells and

 was based in Roanoke, Virginia while working with Corvesta, and that Wife

 “primarily reared the parties’ children during the times [Husband] was away from

 the home.”

¶ 35 Subsection E addressed any direct or indirect contributions made by one

 - 16 -
 ASARE V. ASARE

 2022-NCCOA-1

 Opinion of the Court

 spouse to help educate or develop the career of the other spouse. The trial court found

 that Wife had relocated on two occasions during the marriage due to Husband’s

 changes in employment, first from Connecticut to Georgia, and second from Georgia

 to North Carolina. The trial court also noted that Wife refused to relocate on two

 occasions, specifically refusing to move to Ghana when Husband wanted to take a

 position overseas and refusing to move with Husband and their children to Georgia

 in 2013. The trial court found that Wife had deferred to Husband in furtherance of

 his career for “the vast majority of the marriage[.]” With respect to Husband’s

 contributions, the trial court found that Husband had encouraged Wife to apply for

 certain jobs and drove her to a job interview, noting that although Husband’s efforts

 were “admirable,” they were “relatively minimal given the totality of Wife’s job skills,

 the various demands of raising minor children, and the fact [Husband] usually made

 the decisions on when and where the parties would move since [Husband] was the

 primary wage-earner during the marriage.”

¶ 36 Subsection F addressed the parties’ actions with respect to marital or divisible

 property after the date of separation. The trial court found that Wife had maintained

 the equity in the marital home by making timely mortgage and property tax

 payments, and that the marital home had appreciated in value by $41,500 since the

 date of separation. The trial court found the following with respect to Husband’s

 maintenance of the Georgia home:

 - 17 -
 ASARE V. ASARE

 2022-NCCOA-1

 Opinion of the Court

[Husband] took affirmative steps to maintain, preserve and
prepare the Georgia home for sale after the date of
separation. To this end, however, the actual expenses
incurred by [Husband] is unclear since [Husband]’s own
expense summary is, in some instances, either greatly
inflated, duplicative or projected. Most of the supporting
documentation [Husband] offered are emails, estimates, or
proposals for work to be done, instead of actual expenses
incurred.

Since the Court cannot find [Husband]’s testimony about
his actual out-of-pocket costs and expenses to be clear and
credible, the Court cannot ascertain the true amount
[Husband] paid after the date of separation to maintain
and prepare the Georgia home for sale. Furthermore,
[H]usband admitted he leased the Georgia home and
received rental income from the tenants. A review of his
income tax returns reflected he was able to write-off losses
on the Georgia home in every year he filed a separate tax
return, to wit: 2015 ($11,846 loss); 2016 ($13,090 loss); and
2017 ($52,567 loss).

[Husband] has already received substantial equity out of
the Georgia home, as he eventually acknowledged that in
2013 he refinanced the mortgage secured by the Georgia
home and received $124,875.68 in equity as a result of the
refinance. The November 30, 2013 USAlliance bank
statement identified this mortgage’s existence and balance
payoff. After the Georgia home refinance, [Husband]
deposited the proceeds of $124,875.68 into his Union Bank
account.

Based on the considerations above, the Court does not find
[Husband]’s testimony on these issues to be credible or the
evidence to be sufficient to support a finding in his favor on
this distributional factor.

Finally, [Husband] withdrew $134,000 from the Vanguard
account in 2018 and also took $100,000 from Vanguard to
set-up the TRP account. Both of these actions occurred
after the date of separation and prior to distribution. The
 - 18 -
 ASARE V. ASARE

 2022-NCCOA-1

 Opinion of the Court

 Court considers [Husband]’s actions as a distributional a
 [sic] factor, particularly since there was a net gain from all
 Vanguard and TRP funds of approximately $84,609
 ($496,769 DOD minus $412,160 DOS per Page 1,
 [Husband]’s Exhibit #B3).

 (Emphasis in original.)

¶ 37 In Findings of Fact 20 and 21, the trial court found that “[b]ased on the

 distributional factors in N.C.G.S[.] §50-20(c) and more specifically discussed above,”

 the parties were entitled to the property and accompanying values set out in Exhibit

 A, which was attached and incorporated by reference. The trial court determined

 that the unequal distribution favoring Wife and against Husband was “equitable

 under the facts of this case.”

 Alimony

¶ 38 Following the portion of the findings addressing equitable distribution, the

 trial court turned to the parties’ finances. Findings 23 and 24 summarized the

 parties’ Social Security earnings between 1995 and 2015. Husband’s Social Security

 statements showed earnings of $54,423.00 in 1995 compared to $142,267.00 in 2015,

 while Wife’s statements showed earnings of $713.00 in 1995 compared to $28,451.00

 in 2015.

¶ 39 The trial court made findings regarding additional details about the parties’

 married life, including their children, their move from Connecticut to Georgia,

 Husband’s employment, Wife’s educational pursuits, and Wife’s employment history.

 - 19 -
 ASARE V. ASARE

 2022-NCCOA-1

 Opinion of the Court

 The trial court noted that a job log history provided by Wife only covered 2008 through

 2013, and that while Wife maintained she had continued to look for work since 2013,

 “the Court saw little satisfactory evidence to support her asserted claim. [Wife]’s job

 log presented at [the] hearing only goes up to 2013 and is not wholly sufficient to the

 Court.” Additionally, the trial court found that while Wife was employed in a

 promising career at the time, “no satisfactory evidence emerged showing she has

 reasonably and consistently sought employment which correlates with her

 educational skills after going back to school in 2005. [Wife]’s past lack of efforts on

 this point has likely affected her present income-earning ability.” The trial court also

 found that Wife gave conflicting testimony on the frequency and amount of money

 received from her sister and daughter, and that Wife’s claim that she had no other

 income other than from Duke was not credible.

¶ 40 The next several findings addressed the parties’ standard of living during the

 marriage. The trial court found the parties “enjoyed a good, respectable standard of

 living during the marriage as evidenced by their 4216 square-foot Marital home and

 also the Georgia home.” The trial court also noted that Husband regularly traveled

 to Ghana during the marriage, gifted money to various family members, friends, and

 other entities, and had substantial funds in his bank and investment accounts when

 the parties separated.

¶ 41 The following findings concern Husband’s expenses and liabilities, as well as

 - 20 -
 ASARE V. ASARE

 2022-NCCOA-1

 Opinion of the Court

 Husband’s financial affidavit:

 44. [Husband] lists his current regular recurring
 monthly expenses as $3,145 which includes, among other
 things, estimated anticipated costs such as rent at $1,200
 per month and a car payment at $650 per month. He also
 included $50 per month for a pet despite acknowledging at
 [the] hearing he does not have a pet. His affidavit also
 includes various monthly payments for utilities even
 though he admitted he was not incurring those expenses at
 this time because he was residing with his nephew in
 Ghana.

 45. [Husband] also listed certain expenses on his
 Affidavit which he expects to pay in the future, including
 $225 per month toward his nephew’s education and living
 expenses. He further testified he is currently paying his
 mother $500 per month, which is also reflected on his
 Affidavit.

 46. [Husband] claims several large debts to James Kumi
 and Solomon Owusu-Ansah on his Financial Affidavit, yet
 he did not produce any documentary evidence to support
 such debts or their present loan balances despite having
 ample time and ability to do so.

 47. Stated simply, the Court affords little-to-no weight
 to [Husband]’s current Financial Affidavit from October
 2019 since it fails to reflect, in totality, his actual current
 monthly expenses. [Husband] is only actually currently
 incurring $300-$500 of actual ongoing living expenses on a
 monthly basis.

¶ 42 With respect to Wife, the trial court found that Wife’s pay stub from

 September 2019 reflected earnings of $15.36 per hour, with the expectation that her

 hourly rate would increase after obtaining re-certification. Regarding Wife’s

 expenses, the trial court found that her financial affidavit detailed regular recurring

 - 21 -
 ASARE V. ASARE

 2022-NCCOA-1

 Opinion of the Court

 monthly expenses totaling $3,812.75 and that the mortgage payment on the marital

 home increased from $1,832.59 to $2,047.60 after the affidavit was completed. The

 trial court found that Wife’s total monthly living expenses of $4,624.75 were

 reasonable, and that compared to a gross monthly income of $3,120 per month

 (assuming a new hourly rate of $18 per hour) she would have a monthly deficit of

 $1,504.75, without factoring in any taxes or deductions. The trial court also noted

 that while Wife was a dependent spouse during the marriage, her “initial lack of

 candor on the issue of income from family, along with her past failure to seek

 applicable employment contemporaneous with her job skills, are key factors noted

 and considered by this Court in considering Alimony.”

¶ 43 The following findings of fact addressed Husband’s employment status:

 53. [Husband] claims he is at retirement age and is
 unable to pay alimony to [Wife]. [Husband]’s assertions
 are unconvincing to this Court given the variety of his
 answers regarding employment status.

 54. At [the] hearing, when asked if he was currently
 unemployed, [Husband] stated, “I am retired”. After
 referencing his termination from Corvesta in February
 2018, he was then asked if he had sought employment since
 then, to which he responded, “Yes”. He further stated he
 had “made a lot of contacts”, such as applying for jobs,
 making phone calls and utilizing the LinkedIn resume, for
 example.

 55. A review of [Husband]’s job application log provided
 at [the] hearing, however, shows he last applied for a job in
 September 2018, nearly 11 months before [the] hearing. At
 no point during the hearing did [Husband] imply, or even

 - 22 -
 ASARE V. ASARE

 2022-NCCOA-1

 Opinion of the Court

 mention, he was simply unable to work or actually
 prohibited from obtaining employment.

 56. A deeper review of this same job application log
 reveals he applied for jobs such as a Financial Crimes
 Analyst and also a Benefit Specialist, but there is no
 indication [Husband] even possesses the requisite
 expertise in these fields. [Husband]’s job skills were in
 audit and risk management, and he served as a Director in
 this capacity while working at Corvesta. [Husband]
 acknowledged he gained these particular job skills due to
 his previous experience at IBM. In all, it appears that
 nearly half of [Husband]’s applications were in line with
 his job skills and experience while the other half was not.

 57. When asked by his counsel as to how this litigation
 has affected him, [Husband] testified that these pending
 matters have put him “in limbo” as to when he will retire.
 [Husband] testified the previous day, though, that he was
 already retired.

 58. The Court is not persuaded [Husband] is truly
 retired or that he has neither ability, nor intention, to be
 gainfully employed in the very near future. The Court also
 finds [Husband]’s job log to be inadequate and, given his
 background, also contains shortfalls in applying for jobs
 reasonably within his skillset.

 59. [Husband] is in good health and demonstrates a
 rather keen mind, both of which bode well for him having
 continued future employment opportunities. [Husband]’s
 testimony as to his actual work status and being unable to
 find employment is neither credible nor substantiated by
 the evidence.

¶ 44 The following findings addressed Husband’s ability to pay alimony:

 60. As to his ability to pay Alimony, [Husband] clearly
 plans to continue gifting money to third parties, including
 his mother, along with paying $225 per month combined
 for his nephew’s education and living expenses while he is
 - 23 -
 ASARE V. ASARE

 2022-NCCOA-1

 Opinion of the Court

in school. These expenses are voluntary.

61. By Order of this Court dated June 25, 2017,
[Husband] was ordered to pay [post-separation support] to
[Wife] at rate of $3,003, which included $50/month towards
arrears.

62. [Husband] testified he made his last PSS payment
of $3,003 on or about September 1, 2018.

63. Although [Husband] lost his job in February 2018,
he continued to receive severance pay through the end of
August 2018. He also received net bonus income in
March 2018 totaling $19,176.14. [Husband] also received
unemployment benefits in 2018 totaling approximately
$6,000.

64. In December 2018/January 2019, [Husband] started
receiving Social Security benefits in the amount of ~$2,500
monthly income.

65. [Husband] withdrew $134,000 from Vanguard in
2018.

66. In October 2018, [Husband] sold the Roanoke condo
and netted $80,000 in October 2018. Thereafter, he moved
to Ghana where he presently resides and also owns real
property, perhaps even more property than this Court is
aware.

67. [Husband]’s testimony about his lack of funds and
inability to pay Alimony are simply not credible.
[Husband] has ample means and ability to pay Alimony,
and to pay such Alimony as ordered herein.

68. [Husband]’s lack of employment, coupled with his
lack of candor as to the extent of any real property he owns
in Ghana, appears little more than strategy he has
designed to minimize potential ramifications or obligations
pertaining to Alimony and Equitable Distribution, among
others.

 - 24 -
 ASARE V. ASARE

 2022-NCCOA-1

 Opinion of the Court

¶ 45 The trial court found that during the marriage, “[Wife] was the dependent

 spouse within the meaning of N.C.G.S. §50-16.1A (2) and is substantially in need of

 support from [Husband] to maintain the standard of living to which she became

 accustomed during the marriage. During the marriage [Husband] was the supporting

 spouse within the meaning of N.C.G.S. §50-16.1A (5).” Accordingly, in considering

 the factors set forth in North Carolina General Statute § 50-16.3A(b), the trial court

 determined that Husband was obligated to pay alimony to Wife.

¶ 46 The trial court ordered the following alimony term and form of payment:

 75. [Wife] prefers a lump sum alimony payment in light
 of prior difficulties with [Husband] and, more pointedly,
 the fact [Husband] currently resides in Ghana.

 76. Considering the likely obstacles which could
 foreseeably arise in the event of an alimony order all paid
 in only monthly installments, a portion of Alimony to be
 paid from [Husband] to [Wife] in lump-sum and also in
 monthly installments is appropriate, reasonable,
 equitable, and more efficient for both parties.

 77. Therefore, the Court finds under these facts it is fair
 and equitable to order [Husband] to pay [Wife] alimony as
 follows:

 a. A Seventy-Two Thousand Dollar ($72,000.00)
 lump sum cash payment directly to [Wife] as more fully set
 forth in the decretal portion of this Order.

 b. In addition to the lump-sum ordered in sub-
 paragraph (a) immediately above, beginning October 1,
 2020, and every month thereafter, [Husband] shall make
 monthly alimony payments of $1,200 directly to [Wife] as
 more fully set forth in the decretal portion of this Order.

 - 25 -
 ASARE V. ASARE

 2022-NCCOA-1

 Opinion of the Court

 78. The Court determined this lump-sum amount by
 considering an award of Alimony paid by [Husband] to
 [Wife] in the amount of $1,200 per month in alimony for a
 period of five (5) years. The monthly alimony ordered to
 begin in October 1, 2020 shall be for $1,200 monthly from
 [Husband] to [Wife] for a period of five (5) years.

 Conclusions of Law

¶ 47 Based on the findings of fact, the trial court made conclusions of law restating

 several findings of fact, including: an equitable distribution of marital and divisible

 property and marital debt was not equitable; it was equitable for Wife to be awarded

 an unequal division in her favor of the net marital and divisible estate including

 retirement benefits; Wife was a dependent spouse and substantially in need of

 support from Husband to maintain her standard of living; the amount and method of

 payment of alimony was equitable and fair to all parties; Husband had the ability to

 pay the amount and form ordered; and neither party was entitled to an award of

 attorney’s fees or sanctions.

 Order and Decree

¶ 48 Following the findings of fact and conclusions of law, the trial court ordered

 the marital home and all equity be distributed to Wife, with additional direction for

 Husband to transfer his interest and control of the mortgage to Wife and for Wife to

 either refinance all encumbrances on the marital home into her sole name or facilitate

 a sale within six months of the order. The trial court further ordered that Wife receive

 an equitable distribution credit of $92,211.91 accounting for an interim distribution

 - 26 -
 ASARE V. ASARE

 2022-NCCOA-1

 Opinion of the Court

 received by court order on 17 July 2018.

¶ 49 The order next detailed the distribution of assets between each party. In

 addition to the marital home, Wife was awarded the Honda Pilot, the contents of two

 Wells Fargo accounts, the full contents of Husband’s Fidelity Rollover Account on the

 date of separation (totaling $193,630.00), the divisible growth from the date of

 separation to 31 March 2019 ($38,332.00), seventy percent of the portion of

 Husband’s Corvesta 401K account subject to equitable distribution ($120,242.00), all

 marital property in the Home Depot 401K account on the date of separation

 ($11,328.95), $1,537.16 in 2015 federal tax refunds, and $165.69 in 2015 state tax

 refunds. Husband was awarded all proceeds from the sale of the Roanoke condo

 (approximately $80,000.00), the Lexus and Toyota Corolla, the contents of two other

 Wells Fargo accounts, the contents of the USAlliance Federal Credit Union account,

 the contents of the Union Bank account, the contents of the joint Bank of America

 account, the contents of the Scottrade account, all marital property contents of the

 Vanguard account on the date of separation and any passive gains or losses from the

 date of separation ($100,025.00), the divisible property growth from funds originally

 in the Vanguard account on the date of separation ($84,609.00), thirty percent of the

 portion of Husband’s Corvesta 401K account subject to equitable distribution

 ($51,000.00), $2,132.55 in 2015 federal tax refunds, $1,208.97 in 2015 state tax

 refunds, proceeds from Husband’s 2015 Corvesta bonus paid in March 2016

 - 27 -
 ASARE V. ASARE

 2022-NCCOA-1

 Opinion of the Court

 ($9,929.33), and all debts from the Marriott Rewards credit card, UNC Health Care,

 and Tasha Timberland Hinton DDS.

¶ 50 The order required Husband to pay Wife a lump sum of $72,000.00 alimony

 within sixty days of the order’s entry. Additionally, beginning 1 October 2020 and

 each month thereafter on or before the first day of the month until up through and

 including 30 September 2025, Husband was ordered to pay Wife an additional

 monthly sum of $1,200.00. Husband’s obligation to pay alimony was set to terminate

 upon the first occurrence of any event provided in North Carolina General Statute §

 50-16.9(b), including Wife’s remarriage, death of either the Wife or Husband,

 cohabitation by Wife, or until 30 September 2025.

¶ 51 Husband filed notice of appeal from the equitable distribution and alimony

 order on 17 April 2020.

 II. Discussion

¶ 52 Husband contends many findings of fact are not supported by the evidence; the

 trial court abused its discretion by awarding alimony; and the trial court erred in its

 classification, valuation, and distribution of property in equitable distribution.

 Although Husband begins his brief by addressing alimony, we will first discuss

 Husband’s challenges to the trial court’s findings of fact and equitable distribution.

 A. Findings of Fact

¶ 53 The standard of review from judgment entered after a non-jury trial is

 - 28 -
 ASARE V. ASARE

 2022-NCCOA-1

 Opinion of the Court

 “whether there is competent evidence to support the trial court’s findings of fact and

 whether the findings support the conclusions of law and ensuing judgment.”

 Dechkovskaia v. Dechkovskaia, 232 N.C. App. 350, 352, 754 S.E.2d 831, 834 (2014)

 (citation omitted). These findings “are binding on appeal as long as competent

 evidence supports them, despite the existence of evidence to the contrary.” Id.

 Substantial evidence is defined “as such relevant evidence as a reasonable mind

 might accept as adequate to support a conclusion.” Id.

¶ 54 Husband presents arguments challenging several of the trial court’s findings

 of fact, in addition to arguing that the trial court should have made additional

 findings of fact based on the evidence presented at the hearing. Husband specifically

 challenges Finding of Fact 17(I)C, several portions of Finding of Fact 19, Findings of

 Fact 53-59, 67, 68, and 71. We address each in turn.

 1. Finding of Fact 17(I)C

¶ 55 Husband argues the evidence did not support the trial court’s finding that the

 Roanoke condominium was marital property, pointing to his testimony regarding

 withdrawals from his bank accounts and the source of the $39,631.25 down payment

 used for the condominium’s purchase. Husband also emphasizes that there “is no

 dispute” that the condominium was purchased after the date of separation and was

 not owned at the time of the equitable distribution hearing.

¶ 56 The evidence presented at trial showed Husband withdrew $29,000.00 from

 - 29 -
 ASARE V. ASARE

 2022-NCCOA-1

 Opinion of the Court

 his USAlliance Bank account on 23 October 2015, and $19,000.00 from his Union

 Bank account on 26 October 2015, for a total of $48,000.00. Husband then made a

 down payment of $39,631.25 in cash on 29 October 2015. Additionally, the evidence

 presented at trial established that although the bank accounts listed Husband as the

 title owner, both parties had an interest in the accounts, and accordingly all bank

 account assets were classified as marital property. In evaluating the evidence and

 testimony, the trial court determined that Husband’s testimony regarding the

 withdrawals was “untenable” and that the evidence “sufficiently demonstrated the

 entire down payment of $39,631.25 came from [Husband]’s USAlliance and Union

 Bank accounts—all marital monies[.]” Despite Husband’s assertions on appeal with

 respect to his testimony, the trial court specifically noted his testimony was not

 credible. We hold there was competent evidence to support the trial court’s finding

 that the purchase of the Roanoke condominium was funded by marital assets.

 2. Finding of Fact 19

¶ 57 Husband next contends the trial court erred in several respects in Finding of

 Fact 19, particularly regarding Husband’s age, employment status, separate assets,

 and acts to preserve marital assets.

¶ 58 Husband identifies several findings, including 19B, 53, and 71b, in which the

 trial court found that Husband was sixty-six years old, despite Husband’s testimony

 that he was sixty-seven years old on the date of the hearing. Although it appears

 - 30 -
 ASARE V. ASARE

 2022-NCCOA-1

 Opinion of the Court

 from the record that Husband was in fact sixty-seven years old at the date of the

 hearing, the trial court’s findings that Husband was sixty-six are not essential to

 support any of the trial court’s conclusions of law. Husband has not demonstrated

 that there is any material difference, for purposes of the trial court’s consideration of

 the issues presented in this case, between age sixty-six and age sixty-seven. See, e.g.,

 Black Horse Run Prop. Owners Ass’n-Raleigh, Inc. v. Kaleel, 88 N.C. App. 83, 86, 362

 S.E.2d 619, 622 (1987) (“Where there are sufficient findings of fact based on

 competent evidence to support the trial court’s conclusions of law, the judgment will

 not be disturbed because of other erroneous findings which do not affect the

 conclusions.”).

¶ 59 Husband argues the trial court erred in finding that he was not retired at the

 date of hearing, citing his testimony that he was involuntarily terminated and the

 trial court’s statement that it did not “think it is a dispute that he was involuntarily

 terminated.” Although Husband argues that he “clearly and unambiguously testified

 that he was retired[,]” the transcript reflects that Husband answered questions

 regarding his employment status with varying degrees of clarity. The trial court

 considered Husband’s testimony that he was retired while also noting Husband’s

 testimony regarding contacts and job search efforts made in 2018. The trial court’s

 finding acknowledged Husband’s “differing answers” and in light of the “various

 discrepancies and inconsistencies[,]” the trial court was “not persuaded [Husband] is

 - 31 -
 ASARE V. ASARE

 2022-NCCOA-1

 Opinion of the Court

 ‘retired’, unemployable or that he is unable to find suitable work given his

 employment history and education.” Based on competent evidence including

 Husband’s testimony, the trial court evaluated Husband’s credibility, and based on

 that evaluation, it was reasonable for the trial court to find that Husband was not

 retired or unemployable at the date of the hearing.

¶ 60 Husband argues the evidence did not support findings that Husband “has

 separate assets in excess of $450,000[.]” The trial court found Husband had the

 following separate assets: real property in Ghana valued at $40,000.00; the separate

 portion of Husband’s Vanguard account valued at $312,135.00; the separate portion

 of Husband’s Corvesta account valued at $142,018.00; and a portion of Husband’s

 2015 bonus valued at $4,964.67, resulting in a total sum of $499,117.67. These

 findings were supported by Husband’s testimony, Ms. Bowen’s testimony, and other

 documentary evidence. The trial court did not err in finding that Husband had

 separate assets in excess of $450,000.1

¶ 61 Husband contends the trial court erred in Findings 19B and 59 that both

 parties “by all accounts, present well and appear to be in good physical and mental

 health,” and that “[Husband] is in good health[,]” on the grounds that no evidence or

 1 As discussed below, the trial court classified a portion of the post-separation appreciation

 on the Vanguard account as divisible property, but the evidence supports a classification of
 separate property as to the passive appreciation on the separate portion of the Vanguard
 account. Thus, the total value of Husband’s separate assets will be different on remand, but
 it would still be “in excess of $450,000.”
 - 32 -
 ASARE V. ASARE

 2022-NCCOA-1

 Opinion of the Court

 testimony was offered as to the physical or mental health of either party.

¶ 62 “[I]n an equitable distribution proceeding, the parties’ health is relevant to the

 extent it affects the equitable distribution of assets[,]” meaning that “if a party's

 health affects his or her ability to earn a living or increases his or her living expenses,

 that may be a factor that supports an unequal division of assets in his or her favor.”

 Denny v. Denny, No. COA14-771, 242 N.C. App. 383, *6 (2015) (Unpublished). “Where

 evidence of a distributional factor such as a party’s health is introduced, it is error for

 the trial court to fail to make findings of fact with respect to that factor.” Wall v.

 Wall, 140 N.C. App. 303, 311, 536 S.E.2d 647, 652 (2000) (citation omitted).

¶ 63 In this case, the trial court had the benefit of observing the parties and hearing

 their testimony throughout the trial, and Husband has not pointed to any evidence

 in the record that either he or Wife are in poor health. Cf. id. Accordingly, the trial

 court did not err in finding that both parties “present well” and appeared to be in good

 health.

¶ 64 Husband contends there was insufficient evidence to support the trial court’s

 finding that Husband “voluntarily stopped working at IBM by his own choice[,]”

 which the trial court considered as a distributional factor in Finding of Fact 19C.

 Husband notes Finding of Fact 19E that Wife refused to relocate to Ghana, which

 Husband contends was the direct cause of his termination from IBM. Although

 Husband implicates Wife in his termination from IBM, the evidence presented at the

 - 33 -
 ASARE V. ASARE

 2022-NCCOA-1

 Opinion of the Court

 hearing revealed that Husband had relocated away from his family for employment

 purposes on multiple occasions. The trial court did not err in finding that Husband’s

 employment at IBM ended by his own choice.

 B. Equitable Distribution

¶ 65 Husband contends the trial court abused its discretion by incorrectly

 classifying, valuing, and distributing property pursuant to an equitable distribution

 and by awarding Wife an unequal distribution of marital and divisible property.

¶ 66 “Our review of an equitable distribution order is limited to determining

 whether the trial court abused its discretion in distributing the parties’ marital

 property.” Robinson v. Robinson, 210 N.C. App. 319, 322, 707 S.E.2d 785, 789 (2011)

 (citations omitted). Findings of fact “are conclusive if they are supported by any

 competent evidence from the record.” Beightol v. Beightol, 90 N.C. App. 58, 60, 367

 S.E.2d 347, 348 (1988) (citation omitted).

¶ 67 Under North Carolina General Statute § 50-20(c), equitable distribution is a

 three-step process: the trial court must (1) classify property as being marital,

 divisible, or separate property; (2) calculate the net value of the marital and divisible

 property; and (3) distribute equitably the marital and divisible property.

 Cunningham v. Cunningham, 171 N.C. App. 550, 555, 615 S.E.2d 675, 680 (2005).

 The trial court “must classify the parties’ property into one of three categories—

 marital, divisible, or separate—and then distribute the parties’ marital and divisible

 - 34 -
 ASARE V. ASARE

 2022-NCCOA-1

 Opinion of the Court

 property.” Berens v. Berens, 260 N.C. App. 467, 469, 818 S.E.2d 155, 157 (2018)

 (citation omitted).

¶ 68 In order “to enter a proper equitable distribution judgment, the trial court

 must specifically and particularly classify and value all assets and debts maintained

 by the parties at the date of separation.” Robinson, 210 N.C. App. at 323, 707 S.E.2d

 at 789 (emphasis in original) (citation and quotations omitted). The trial court’s order

 “must be specific and detailed enough to enable a reviewing court to determine what

 was done and its correctness.” Id. (citation and quotations omitted).

 1. Classification

¶ 69 Husband first addresses his Vanguard retirement account, arguing the trial

 court abused its discretion by determining that all postseparation appreciation of a

 mixed asset was entirely marital divisible property and did not contain a separate

 divisible property component. Husband specifically argues the trial court erred in

 finding that the increase of $84,609.00 in Husband’s Vanguard account was marital

 property.

¶ 70 North Carolina General Statute § 50-20(b)(4) defines divisible property to

 include:

 All appreciation and diminution in value of marital
 property and divisible property of the parties occurring
 after the date of separation and prior to the date of
 distribution, except that appreciation or diminution in
 value which is the result of postseparation actions or
 activities of a spouse shall not be treated as divisible
 - 35 -
 ASARE V. ASARE

 2022-NCCOA-1

 Opinion of the Court

 property.

 N.C. Gen. Stat. § 50-20(b)(4)(a) (2019). “Under the plain language of the statute, all

 appreciation and diminution in value of marital and divisible property is presumed

 to be divisible property unless the trial court finds that the change in value is

 attributable to the postseparation actions of one spouse.” Wirth v. Wirth, 193 N.C.

 App. 657, 661, 668 S.E.2d 603, 607 (2008) (emphasis in original). “Where the trial

 court is unable to determine whether the change in value of marital property is

 attributable to the actions of one spouse, this presumption has not been rebutted and

 must control.” Id. (citation omitted).

¶ 71 Ms. Bowen’s account summary provided that the Vanguard account totaled

 $100,025.00 in marital property and $312,135.00 in Husband’s separate property at

 the date of separation and appreciated to $120,559.00 in marital property and

 $376,211.00 in Husband’s separate property as of 31 March 2019. Although the trial

 court accepted Ms. Bowen’s testimony and calculations, it determined that Husband

 “failed to establish that this divisible income was separate property, therefore the

 presumption that this increase is marital remains and the Court treats this $84,609

 as marital property for the purposes of equitable distribution.” The evidence

 presented and accepted by the trial court does not support the trial court’s finding

 that the entire increase of $84,609.00 was marital property because the evidence

 shows passive appreciation of $20,534.00 on the marital portion of the Vanguard

 - 36 -
 ASARE V. ASARE

 2022-NCCOA-1

 Opinion of the Court

 account; this appreciation would be divisible property. Although the passive

 appreciation of the marital portion was divisible property, the passive appreciation

 on Husband’s separate portion of the Vanguard account should have been classified

 as his separate property. The trial court abused its discretion in finding that the

 entire increase of $84,609.00 was marital property, as the evidence supported a

 finding that only the $20,534.00 increase in the marital portion of the Vanguard

 account was divisible property. As a result, we vacate this portion of the order and

 remand to the trial court for entry of an order correcting this valuation and

 classification.

¶ 72 Husband next contends the trial court abused its discretion by determining the

 Roanoke condominium and the proceeds from its sale were marital property.

 Husband’s argument centers on his assertion at the hearing that he borrowed from

 third parties to pay the down payment for the Roanoke condominium. As previously

 discussed, the trial court’s findings regarding the Roanoke condominium and

 Husband’s account withdrawals were supported by evidence presented at the

 hearing. The trial court did not abuse its discretion in classifying the Roanoke

 condominium and the proceeds as marital property.

¶ 73 Husband argues the trial court abused its discretion by failing to award

 Husband credit for repairs of a marital asset from his separate estate. Husband cites

 his testimony that he paid $21,262.00 for repairs and maintenance to the Georgia

 - 37 -
 ASARE V. ASARE

 2022-NCCOA-1

 Opinion of the Court

 home, as well as “an expense summary/invoices” provided to the trial court. Contrary

 to Husband’s assertions, the trial court found that Husband’s “expense summary is,

 in some instances, either greatly inflated, duplicative or projected[,]” and that “[m]ost

 of the supporting documentation [Husband] offered are emails, estimates, or

 proposals for work to be done, instead of actual expenses incurred.” The trial court

 also noted equity Husband received from refinancing in 2013 as well as Husband’s

 testimony that he received rental income from leasing the Georgia home. The trial

 court did not abuse its discretion in finding that Husband’s testimony was not

 credible and the evidence was sufficient to support a finding in Husband’s favor.

 2. Net Value

¶ 74 Husband has not presented a specific argument with respect to the trial court’s

 net valuation of the marital and divisible property. Accordingly, we address this step

 to note that the trial court was presented with voluminous detailed documentary

 evidence and expert testimony regarding the parties’ assets. But as noted above, the

 trial court erred by classifying all the passive appreciation in the Vanguard account

 as divisible, as a portion of that appreciation was Husband’s separate property. But

 except for this error to be corrected on remand, we hold that the trial court did not

 abuse its discretion in determining the net valuation of the marital and divisible

 property.

 3. Unequal Division

 - 38 -
 ASARE V. ASARE

 2022-NCCOA-1

 Opinion of the Court

¶ 75 The equitable distribution statute permits trial courts to order an unequal

 division of the parties’ marital property, provided that the court considers the

 relevant statutory factors as set out in North Carolina General Statute § 50-20(c).

 Peltzer v. Peltzer, 222 N.C. App. 784, 788, 732 S.E.2d 357, 360 (2012). When evidence

 tending to show that an equal division of marital property would not be equitable is

 admitted, the trial court “must exercise its discretion in assigning the weight each

 factor should receive in any given case.” White v. White, 312 N.C. 770, 777, 324 S.E.2d

 829, 833 (1985). “It is well established that where matters are left to the discretion

 of the trial court, appellate review is limited to a determination of whether there was

 a clear abuse of discretion[,]” which requires a showing that the trial court’s “actions

 are manifestly unsupported by reason.” Id. (citations omitted). “A ruling committed

 to a trial court’s discretion is to be accorded great deference and will be upset only

 upon a showing that it was so arbitrary that it could not have been the result of a

 reasoned decision.” Id.

¶ 76 The trial court specifically addressed factors set out in North Carolina General

 Statute § 50-20(c) (1), (3), (5), (6), (7), (11a), and (12) in the subsections of Finding of

 Fact 19. Based on the evidence as discussed above, the trial court made lengthy,

 detailed findings addressing the relative values of Husband’s and Wife’s separate

 assets; Wife’s deference to Husband in furtherance of his career for the “vast majority

 of the marriage”; and Wife’s actions to maintain and preserve the equity in the

 - 39 -
 ASARE V. ASARE

 2022-NCCOA-1

 Opinion of the Court

 marital home. The trial court properly considered the factors enumerated in North

 Carolina General Statute § 50-20(c) and did not abuse its discretion in ordering an

 unequal division of property.

 C. Alimony

¶ 77 Husband presents several arguments regarding the trial court’s award of

 alimony. First, Husband contends the trial court abused its discretion by holding

 that his current income was sufficient to pay alimony to Wife. Husband specifically

 argues that the parties’ incomes changed substantially between the date of

 separation in August 2015 and the date of the hearing in October 2019. Second,

 Husband argues the trial court abused its discretion in determining Husband’s

 reasonable monthly needs by failing to consider his standard of living and expenses

 and by making findings regarding his current expenses that were not supported by

 the evidence. And third, Husband argues the trial court abused its discretion by

 failing to make findings of fact regarding the amount and duration of the alimony

 award and by ordering both a lump sum payment and periodic monthly payments.

 We address each in turn.

 1. Standard of Review

¶ 78 In an action brought pursuant to Chapter 50 of the General Statutes, either

 party may move for alimony, and “[t]he court shall award alimony to the dependent

 spouse upon a finding that one spouse is a dependent spouse, that the other spouse

 - 40 -
 ASARE V. ASARE

 2022-NCCOA-1

 Opinion of the Court

 is a supporting spouse, and that an award of alimony is equitable after considering

 all relevant factors, including those set out in subsection (b) of this section.” N.C.

 Gen. Stat. § 50-16.3A(a) (2019). The court shall exercise its discretion in determining

 the amount, duration, and manner of payment of alimony. N.C. Gen. Stat. § 50-

 16.3A(b).

 2. Earnings and Earning Capacities of the Parties

¶ 79 “Alimony is ordinarily determined by a party’s actual income, from all sources,

 at the time of the order.” Kowalick v. Kowalick, 129 N.C. App. 781, 787, 501 S.E.2d

 671, 675 (1998) (emphasis in original) (citation omitted). “To base an alimony

 obligation on earning capacity rather than actual income, the trial court must first

 find that the party has depressed [their] income in bad faith.” Id.

¶ 80 As to Husband’s income, the trial court found he began receiving Social

 Security benefits of approximately $2,500.00 per month in January 2019. The trial

 court also found “[Husband]’s testimony about his lack of funds and inability to pay

 Alimony are simply not credible. [Husband] has ample means and ability to pay

 Alimony, and to pay such Alimony as ordered herein.” Significantly, the trial court

 found that “[Husband]’s lack of employment, coupled with his lack of candor as to the

 extent of any real property he owns in Ghana, appears little more than strategy he

 has designed to minimize potential ramifications or obligations pertaining to Alimony

 and Equitable Distribution, among others.” This finding, coupled with the trial

 - 41 -
 ASARE V. ASARE

 2022-NCCOA-1

 Opinion of the Court

 court’s finding that it considered the “earnings and earning capacities of the

 parties[,]” reflects that the trial court determined that Husband had depressed his

 income and assets in bad faith and accordingly considered his earning capacity as

 well as his current income. The trial court did not abuse its discretion in considering

 Husband’s earning capacity in setting alimony.

¶ 81 Husband also argues the parties’ incomes substantially changed between the

 date of separation and the date of the hearing and contends the trial court abused its

 discretion via the alimony award “to a spouse who, as in this case, is earning at least

 $620 more a month in income than the supporting spouse at the time of trial[.]”

 Although Husband is correct that Wife’s income had substantially changed since the

 date of separation, Husband has failed to show that the trial court abused its

 discretion in its findings regarding the parties’ earnings and earning capabilities. As

 noted above, the trial court specifically found Husband’s evidence regarding his

 current income and assets not to be credible. The trial court is the sole judge of the

 credibility and weight of the evidence. See Matter of D.L.W., 368 N.C. 835, 843, 788

 S.E.2d 162, 167–68 (2016) (“[T]he trial judge had the responsibility to ‘pass[] upon

 the credibility of the witnesses and the weight to be given their testimony and the

 reasonable inferences to be drawn therefrom.’” (quoting Knutton v. Cofield, 273 N.C.

 355, 359, 160 S.E.2d 29, 33 (1968))).

 3. Standard of Living and Reasonable Needs

 - 42 -
 ASARE V. ASARE

 2022-NCCOA-1

 Opinion of the Court

¶ 82 Husband next contends the trial court failed to consider his standard of living

 and expenses and by making findings regarding his current expenses that were not

 supported by the evidence.

¶ 83 Regarding the reasonable needs of the parties, the trial court must consider

 the parties’ accustomed standard of living established during the marriage in

 addition to the parties’ actual expenses at the time of trial. Myers v. Myers, 269 N.C.

 App. 237, 261, 837 S.E.2d 443, 460 (2020). “This Court has long recognized that ‘[t]he

 determination of what constitutes the reasonable needs and expenses of a party in an

 alimony action is within the discretion of the trial judge, and he is not required to

 accept at face value the assertion of living expenses offered by the litigants

 themselves.’” Nicks v. Nicks, 241 N.C. App. 487, 501, 774 S.E.2d 365, 376 (2015)

 (citation omitted) (alteration in original). Our Supreme Court has established that

 the accustomed standard of living is based upon the parties’ lifestyle during the

 marriage and not just economic survival:

 We think usage of the term accustomed standard of living
 of the parties completes the contemplated legislative
 meaning of maintenance and support. The latter phrase
 clearly means more than a level of mere economic survival.
 Plainly, in our view, it contemplates the economic standard
 established by the marital partnership for the family unit
 during the years the marital contract was intact. It
 anticipates that alimony, to the extent it can possibly do so,
 shall sustain that standard of living for the dependent
 spouse to which the parties together became accustomed.
 For us to hold otherwise would be to completely ignore the
 plain language of G.S. 50-16.5 and the need to construe our
 - 43 -
 ASARE V. ASARE

 2022-NCCOA-1

 Opinion of the Court

 alimony statutes in pari materia. This we are unwilling to
 do.

 Williams v. Williams, 299 N.C. 174, 181, 261 S.E.2d 849, 855 (1980).

¶ 84 Husband cites his testimony at trial and his EDIA in support of his argument

 that the trial court abused its discretion by ignoring the statutory factors in North

 Carolina General Statute § 50-16.3A(b). As previously discussed, the trial court

 determined that Husband’s testimony and EDIA were not credible and based its

 findings on the competent evidence presented at trial. The trial court also made

 findings with respect to Wife’s monthly expenses and reasonable needs, which were

 based on Wife’s testimony and EDIA. There was sufficient evidence to support the

 trial court’s findings with respect to the standard of living and reasonable needs of

 the parties, and the trial court did not abuse its discretion.

 4. Amount and Duration, Lump Sum, and Periodic Payments

¶ 85 Husband argues the trial court abused its discretion in requiring Husband to

 pay alimony by both lump sum payment and periodic payments.

¶ 86 The duration of an alimony award may be for a specified or for an indefinite

 term. N.C. Gen. Stat. § 50-16.3A(b). In determining the amount, duration, and

 manner of payment of alimony, the court shall consider all relevant statutory factors

 as identified in North Carolina General Statute § 50-16.3A. Also, “[t]he court shall

 set forth the reasons for its award or denial of alimony and, if making an award, the

 reasons for its amount, duration, and manner of payment.” N.C. Gen. Stat. § 50-
 - 44 -
 ASARE V. ASARE

 2022-NCCOA-1

 Opinion of the Court

 16.3A(c).

¶ 87 The trial court’s findings address in detail many of the factors set forth in

 North Carolina General Statute § 50-16.3A(b), including the relative earnings and

 earning capacities of the parties; the ages and physical, mental, and emotional

 conditions of the spouses; the earnings and earning capacities of the parties;

 contributions of the parties to the education, training, or earning power of the other;

 the relative needs of the parties; the standard of living during the marriage; and other

 considerations relating to the economic circumstances of the parties. The order

 provided sufficient reasoning for the award, amount, and duration of alimony.

¶ 88 Regarding the form of payment, “[a]limony or postseparation support shall be

 paid by lump sum payment, periodic payments, income withholding, or by transfer of

 title or possession of personal property or any interest therein, or a security interest

 in or possession of real property, as the court may order.” N.C. Gen. Stat. § 50-16.7(a)

 (2019). The trial court must make findings of fact supporting its determination of the

 “manner of payment” of the alimony, as well as the amount and duration. See N.C.

 Gen. Stat. § 50-16.3A(c) (“Findings of Fact. – The court shall set forth the reasons for

 its award or denial of alimony and, if making an award, the reasons for its amount,

 duration, and manner of payment.”).

¶ 89 This Court has held that trial courts have the authority to order both lump

 sum and periodic payments. See Stickel v. Stickel, 58 N.C. App. 645, 647, 294 S.E.2d

 - 45 -
 ASARE V. ASARE

 2022-NCCOA-1

 Opinion of the Court

 321, 323 (1982) (upholding trial court’s award of periodic payments of alimony

 together with lump sum payment of $30,000.00); Guy v. Guy, 27 N.C. App. 343, 346,

 219 S.E.2d 291, 293 (1975) (“The trial judge, reacting to each case flexibly and fairly,

 may award the financially strained spouse assistance through a lump sum payment,

 a monthly stipend, or some unique combination thereof, in his discretion.” (citation

 omitted)).

¶ 90 Although Husband asserts that North Carolina General Statute § 50-16.7(a)

 required the trial court to order only one form of alimony payment instead of two,

 Husband has not presented any authority supporting this argument. In fact, prior

 cases have approved a combination of a lump sum and periodic payments. See Stickel,

 58 N.C. App. at 647, 294 S.E.2d at 323. As directed by North Carolina General

 Statute § 50-16.3A(c), the trial court made specific findings supporting its rationale

 for awarding a lump sum along with the periodic payments. The trial court

 considered the potential difficulty of enforcing the periodic payments of alimony, as

 Husband was residing in Ghana, as well as Husband’s lack of credibility as to his

 financial circumstances and assets. The trial court had the discretion to award “some

 unique combination” of assistance and made the findings of fact needed to support

 this award. Guy, 27 N.C. App. at 346, 219 S.E.2d at 293. The trial court’s award of

 both lump sum and periodic monthly payments was not an abuse of discretion. See

 id.

 - 46 -
 ASARE V. ASARE

 2022-NCCOA-1

 Opinion of the Court

 III. Conclusion

¶ 91 We hold that Findings of Fact 17(I)C, 19A-E, 53-59, 67, 68, and 71 were

 supported by competent evidence. We hold that the trial court did not abuse its

 discretion in its equitable distribution determination, except for Finding of Fact 19F

 that the entire passive appreciation in the Vanguard account of $84,609.00 was

 marital property, as the evidence supported a finding that only the $20,534.00

 passive appreciation attributed to the marital portion of the Vanguard account was

 divisible property. As a result, we vacate and remand that portion of the order for

 correction of this valuation and classification. On remand, the trial court shall enter

 an amended order correcting the valuation and classification of the post-separation

 appreciation in the Vanguard account and, in its discretion, making any revisions to

 the distribution of the marital and divisible property as needed based upon that

 correction. The order on remand shall be based upon the existing record. If the trial

 court determines, in its discretion, that the modification to the findings as to the

 classification and valuation of the passive appreciation on Husband’s separate

 portion of the Vanguard account would affect the alimony award in any way, either

 in the amount of alimony awarded or the manner of payment, the trial court may, but

 is not required, to modify the alimony award only as necessary to address that change

 in the findings as to Husband’s assets and ability to pay. Otherwise, we affirm the

 trial court’s order regarding alimony.

 - 47 -
 ASARE V. ASARE

 2022-NCCOA-1

 Opinion of the Court

AFFIRMED IN PART, VACATED AND REMANDED IN PART.

Judge ZACHARY concurs.

Judge TYSON concurs in part and dissents in part.

 - 48 -
 No. COA20-708– Asare v. Asare

 TYSON, Judge, concurring in part and dissenting in part.

¶ 92 I concur with the majority’s opinion holding that Finding of Fact 19F that the

 entire passive appreciation in the Vanguard account of $84,609.00 was marital

 property is unsupported. The evidence admitted supports a finding that only

 $20,534.00 in passive appreciation is to be attributed to the marital portion of the

 Vanguard account as divisible property.

¶ 93 This erroneous $84,609.00 valuation was also used to support the trial court’s

 award of alimony and award for the unequal equitable distribution. The trial court’s

 award of alimony and equitable distribution is also properly reversed and remanded.

 I respectfully dissent.

 I. Standard of Review

¶ 94 Whether a spouse is entitled to an award of alimony is a question of law.

 Rickert v. Rickert, 282 N.C. 373, 379, 193 S.E.2d 79, 82 (1972). The trial court’s

 conclusions of law are reviewed de novo. Lee v. Lee, 167 N.C. App. 250, 253, 605

 S.E.2d 222, 224 (2004).

¶ 95 Generally, the trial court’s decision regarding the amount of alimony and

 equitable distribution is:

 left to the sound discretion of the trial judge and will not be
 disturbed on appeal unless there has been a manifest abuse
 of that discretion. When the trial court sits without a jury,
 the standard of review on appeal is whether there was
 competent evidence to support the trial court’s findings of
 fact and whether its conclusions of law were proper in light
 of such facts.
 ASARE V. ASARE

 2022-NCCOA-1

 Tyson, J., concurring in part and dissenting in part

¶ 96 Williamson v. Williamson, 217 N.C. App. 388, 390, 719 S.E.2d 625, 626 (2011)

 (citations and quotation marks omitted). “When a trial judge acts under a

 misapprehension of the law, this constitutes an abuse of discretion.” State v. Nunez,

 204 N.C. App. 164, 170, 693 S.E.2d 223, 227 (2010) (citing Hines v. Wal-Mart Stores

 E., L.P., 191 N.C. App. 390, 393, 663 S.E.2d 337, 339 (2008)).

 II. Alimony

¶ 97 N.C. Gen. Stat. § 50-16.3A governs the award of alimony, and provides: “The

 court shall award alimony to the dependent spouse upon a finding that one spouse is

 a dependent spouse, that the other spouse is a supporting spouse, and that an award

 of alimony is equitable after considering all relevant factors[.]” N.C. Gen. Stat. § 50-

 16.3A(a) (2019) (emphasis supplied).

¶ 98 “Alimony is ordinarily determined by a party’s actual income, from all sources,

 at the time of the order.” Kowalick v. Kowalick, 129 N.C. App. 781, 787, 501 S.E.2d

 671, 675 (1998) (citation omitted) (emphasis original and supplied). This Court

 reaffirmed this requirement and later held: “A supporting spouse’s ability to pay an

 alimony award is generally determined by the supporting spouse’s income at the time

 of the award.” Rhew v. Felton, 178 N.C. App. 475, 484-85, 631 S.E.2d 859, 866 (2006)

 (emphasis supplied) (citation omitted). The party seeking alimony carries the burden

 to show the “accustomed standard of living” and their lack of the means to maintain
 ASARE V. ASARE

 2022-NCCOA-1

 Tyson, J., concurring in part and dissenting in part

 that standard. Williams v. Williams, 299 N.C. 174, 181-82, 261 S.E.2d 849, 855

 (1980).

¶ 99 Undisputed facts show at the time of the hearing Defendant had been

 terminated from his last employment, was sixty-seven years old, and had retired. He

 had begun to draw payments from Social Security. Defendant also can take

 distributions and withdrawals from his retirement accounts and pension plan. The

 trial court’s improper attribution of the Vanguard account’s appreciation as marital

 property affects Defendant’s income as a retiree “at the time of the award.” Rhew,

 178 N.C. App. at 485, 631 S.E.2d at 866 (emphasis supplied). Plaintiff has failed to

 carry her burden. The error we all agree occured renders the trial court’s alimony

 award to be wholly speculative. The award of alimony is properly reversed and

 remanded to the trial court for further evidence and correction.

 III. Equitable Distribution

¶ 100 The equitable distribution statute requires the trial court to conduct a three-

 step analysis when making an equitable distribution of the marital assets: (1) classify

 the property; (2) calculate the net value of the property; and, (3) distribute the

 property in an equitable manner. N.C. Gen. Stat. § 50-20 (2019).

¶ 101 An equal distribution of the marital property is statutorily presumed to be

 equitable unless “the court determines that an equal division is not equitable.” N.C.

 Gen. Stat. § 50-20(c) (2019). “The burden is on the party seeking an unequal division
 ASARE V. ASARE

 2022-NCCOA-1

 Tyson, J., concurring in part and dissenting in part

 of marital assets to prove by a preponderance of the evidence that an equal division

 is not equitable.” Hall v. Hall, 88 N.C. App. 297, 309, 363 S.E.2d 189, 197 (1987)

 (citing White v. White, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985).

¶ 102 Plaintiff failed to meet her burden to overcome the statutory presumption of

 equal distribution presumption to be entitled to an unequal division. Defendant has

 shown the trial court erred by misclassifying and calculating the entire passive

 appreciation in the Vanguard account of $84,609.00 as marital property, as the

 evidence supported a finding that only the $20,534.00 passive appreciation should be

 attributed to the marital portion of the Vanguard account as divisible property. On

 remand the trial court should award an equal distribution, unless Plaintiff carries

 her burden to overcome the statutory presumption by showing entitlement to greater

 than an equal amount. N.C. Gen. Stat. § 50-20(c).

 IV. Conclusion

¶ 103 I concur with the majority opinion’s holding Finding of Fact 19F that the entire

 passive appreciation in the Vanguard account of $84,609.00 was marital property is

 erroneous. This error, coupled with a Defendant, who was discharged from his last

 employment without fault, is retired, draws Social Security, and who draws income

 from this account, requires the alimony as well as unequal equitable distribution

 order to be also reversed and remanded. I respectfully dissent.